**BRITTON et al. v. UNITED STATES.**

No. 4696.

Circuit Court of Appeals, Seventh Circuit.

July 27, 1932.

Rehearing Denied Oct. 7, 1932.

Leo Klein and J. Harold Mosely, both of Chicago, Ill., for appellants.

George E. Q. Johnson, U. S. Atty., and Mary D. Bailey, Asst. U. S. Atty., both of Chicago, Ill. (Mary C. Whelan, of Chicago, Ill., of counsel), for the United States.

Before ALSCHULER and EVANS, Circuit Judges, and WILKERSON, District Judge.

ALSCHULER, Circuit Judge.

Appellants, with their codefendants, Reynolds and Claiborne, were convicted on an indictment of one count charging them with conspiring together to commit "the offense of unlawfully receiving, concealing, and facilitating the transportation and concealment of a large quantity of a certain derivative of opium, to-wit, eighteen (18) ounces of morphine hydrochloride, after being imported contrary to law, knowing the same to have been imported, contrary to law," in violation of the Narcotic Drugs Import and Export Act (21 USCA § 171 et seq.).

Notwithstanding the denials by appel-

lants of each and every criminating circumstance which had been testified to, and the alibi evidence on behalf of each of them, the record discloses much substantial evidence that the indicted men conspired together to take from Poole and Campbell a considerable quantity of morphine which they had brought to Chicago, and to receive and conceal it until they might dispose of it for their personal profit.

It appears from this evidence that Reynolds and Claiborne had become aware of the presence in Chicago of Poole and Campbell with their morphine, of which they wished to dispose, and thereupon Reynolds and Claiborne informed appellants, who had long been Chicago policemen, and suggested their co-operation with a view to pretending the arrest of Poole and Campbell and depriving them of the morphine, a scheme into which appellants appear to have promptly and whole-heartedly entered.

Without detailing particulars of the scheme, it suffices to say that it was planned and executed with a precision and deftness which stamps the participants as past masters of the "hi-jacking" art. They even went so far as to extort from Poole what money he had ($70) in consideration of releasing him from pretended arrest, and permitting him to escape. Campbell had previously fled. All this was established by the evidence of Reynolds and Claiborne testifying for the government, as well as that of the victims and of three other persons in the home of the woman in which the seizure was made, and by the chauffeur who drove the car in which certain of the defendants and Poole were riding after the "arrest."

▮▮ The main contention of error seems to be that the evidence does not show the stuff taken to have been morphine, and that, if morphine, it does not appear to have been imported, to the knowledge of appellants as charged in the indictment. The evidence discloses that the stuff was repeatedly referred to as morphine in conversations between the conspirators, and with others. Poole testified that it was morphine—eighteen ounces in small separate tins, for which they agreed to pay the owners $1,040. Poole opened several of the tins, and Claiborne, who said he knew the drug, tasted and smelled of the contents, and testified it was morphine. All of the information which came to appellants was that the packages contained morphine, and they conspired to possess themselves of it upon their assumption that it was morphine.

Conspiracy is essentially a crime of intent. Having intended to possess themselves of this stuff as morphine, it would seem incongruous to permit them to defend on the ground that it was not proved to be morphine. If, however, it may be considered that proof of its being morphine was necessary, beyond their own distinct understanding and belief that it was morphine with which they were dealing, we believe that, for the purposes of this charge of conspiracy, the positive evidence of witnesses that it was morphine sufficiently supplies that fact.

▮ And so as to proof of importation. The fact of the presence of this large quantity of morphine without the necessary indicia of compliance with the law would of itself afford some evidence of its having been smuggled into this country, within whose borders the production of this drug is almost nil. But there is, additionally, evidence of statements by the persons who brought it to Chicago that it was brought from Mexico, and of this fact it seems appellants were aware. And as respects their intent, it appears they intended to enter into this conspiracy with the object of receiving, possessing, and concealing morphine which had been imported into the country. For the purpose of proving the conspiracy, we think this is all that was necessary in that regard.

▮ Execution of the conspiracy was not essential to be shown in order to establish the conspiracy itself. Guilt would appear upon proof of the alleged scheme to violate the law, coupled with proof of an alleged overt act, even though no morphine had been received pursuant to the scheme. United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; Williamson v. United States, 207 U. S. 425, 446, 28 S. Ct. 163, 52 L. Ed. 278; Ferracane v. United States, 29 F.(2d) 691 (C. C. A. 7); Proffitt v. United States, 264 F. 299 (C. C. A. 9).

▮ It is charged that error intervened when the court in its instructions, reading to the jury provisions of the Narcotic Act, read also that section (section 4) which specifies that, "whenever on trial for violation of this section the defendant is shown to have or to have had possession of such opium, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury." 38 Stat. 275, Sec. 4. 21 USCA § 178. The contention is that this was not a trial for violation of the section referred to, but for violation of the statute against conspiracy. But immediately after this sec-

tion there followed in the instructions a specific caution to the jury to "remember in all your discussions the fact that these defendants are not charged with violating the Narcotic Drugs Import and Export Act. They are charged with violating that statute of the United States which prohibits a conspiracy." And thereupon the law of conspiracy was fully and clearly presented.

The instructions well guarded the rights of the defendants in every essential respect, and no jury of average intelligence could have been misled by the reading of the section objected to.

The record discloses no reversible error, and the judgment is affirmed.